Good afternoon, your honors. May it please the court. I'm Steve Mather, representing William Goddard, the appellant in these cases. Goddard alleges... My clock hasn't started. I don't know if you want to give me an unlimited amount of time or... Deputy Clerk, could you please get the clock started? Goddard alleges that the tax court made many errors in the proceedings below, but I want to focus on four for the purpose of this argument. First is the TEFRA election. The tax court applied the statute in violation of its plain terms in holding that a partnership that was already a TEFRA partnership could not elect to extend that status. That violates the plain meaning of the statute. The tax court also then applied the underlying regulation in violation of the plain terms of the regulation because the regulation, by its expressed terms, only applies to an election by a small partnership, and the partnership, GG Capital, in our case, was not a small partnership. The second issue is the 09 NODs. Those NODs are only authorized by statute. Can I go back to the TEFRA issue? I thought the argument was that Mr. Greenberg had elected a TEFRA partnership, and the court rejected that on the grounds that the document allegedly electing TEFRA was not sufficient under the regulation. Are you making that argument, or am I mistaken here? There are several arguments to be made on that issue. I was kind of doing the highlights, but let's dive into this. So on this TEFRA election, the tax court held that a partnership that was already a TEFRA partnership could not elect under the statute. That was one of the holdings. I think everybody, including the government, agrees that holding was erroneous. It's just an incorrect reading of the statute. So then the second question becomes, is compliance with the regulation required? The regulation, by its own terms, only applies to an election by a small partnership. The tax court found, and the parties agree, that GG Capital was not a small partnership. So as a literal interpretation of the regulation, that regulation simply doesn't apply in our case. Then we get to the issue of, if it applies, then was the election form that was completed by Mr. Greenberg and attached to the 1997 return, did it comply with the regulation, and specifically the requirement that all pursuant to California law, the California Partnership Act, and the cases, including the 100-year-old cases, that a partner in a general partnership is the agent for the other partners, and Mr. Greenberg was entirely within his authority to be signing for the other partners as agent and co-partner and general partner. So are you saying, I think in your argument, you said the regulation exceeded the authority of the commissioner, that it wasn't a permissible interpretation of the statute? Well, I don't think I said that, and if I did, I could modify it, because the regulation is quite clearly only applies by its own terms. By its own terms, I'm just asking for an interpretation of the regulation according to its terms. And by its small partnership, and that's not us. So in effect, what the tax court did is it held us to- You're talking about the 1997 tax return when they signed it, when Seladium, if I'm saying that right, Seladium was part of it. That's why they were not a small partnership, because Seladium was part of it? That's correct. That's what the tax court did. I thought on that, that the issue was that although he testified and reported that he had signed on their behalf, he couldn't even name who gave him permission from Seladium. So that really kind of came down to sort of a credibility issue. And that seems to be very difficult to ask us to overturn the tax court's view on that he wasn't credible in testifying that he actually had permission to sign on their behalf, right? Isn't that what that turned on in 97? Well, it turns on whether we're even subject to the requirement that every partner sign, because that is a creature of the regulation. I didn't recall that in 97, it wasn't even whether or not every partner needs to sign or not. He can't sign on their behalf if he doesn't have their permission to sign, right? Correct. And I thought that was what the whole point was, was that the tax court didn't buy that he actually had their permission when he didn't even really know who would have given him permission. Right. I mean, that is a factual question if the regulation applies. But our position is the regulation, by its literal terms, does not apply to our election. I'm confused because it's not clear to me that that turns on whether or not the regulation applies, because even assuming that the regulation didn't apply, the tax courts view that I just don't think you have permission to sign on their behalf would would still be dispositive for 1997. Well, it's again, that that only is a relevant inquiry if there's a requirement that all partners sign and outside of the regulation, that requirement does not exist. And we say that we are outside of the regulation just to be. So I think I'm following but your position is that let's say that there was no IRS relay regulation that all partners must sign. But one partner can't sign on behalf of these. So Seladium, if if they don't even have permission to sign on their behalf. Right. Well, that's not true. Literally, under the Tefra rules, Greenberg was the tax matters partner of of the capital partnership and statutorily and regulatory the tax matters partner is given all kinds of authority to make decisions and elections and and handle the litigation and do basically they're they're treated like an officer in a corporation. And so the consent of the shareholder, if you will, or the partner in our case, to the action by the corporate officers is not even a requirement outside of the context of the did apply. Right. That it said something like it's strange credulity to think that that there would be two different regimes, something along those lines. Why was the 11th Circuit analysis of this erroneous in your view? Well, because it's it it is based on kind of a touchy feely sort of belief on how it should work when this when the regulation itself, which we should be construing according to its plain meaning by its terms, does not apply. So we're basically saying, well, we think that that the IRS may have wanted to do this. And so we'll interpret the regulation inconsistently with what it says. And that's not not not the the construction argument that I'm familiar with. I'd like to ask you a little bit about the 11th Circuit case. Is that the law? Is that a law of the case situation? Are we in a law of the case situation? I don't believe we are, because that's a different it's the appeal for a different taxpayer. We had two taxpayers consolidated. I understand that. But is it really another taxpayer or is it the same taxpayer in disguise? Are we really talking about different taxpayers or are we talking about the same partnership? Well, it is the same partnership, but it is certainly different taxpayers. And it was actually the government's motion to split the case out of the 9th Circuit and send half of the case here to or out of the 11th Circuit and send half of it here to the 9th. OK, but let me if I may pursue the 11th Circuit case. Because I find that a bit anomalous that we could issue a ruling that is different from that of the 11th Circuit under the same as to the same partners in the same partnership. How do you distinguish this case from the 11th Circuit case? And why should we not follow that case? Well, I think the 11th Circuit was simply wrong in in kind of fashioning. I would expect you to argue that, but now tell me why. Well, I mean, they fashioned kind of a rationalization based holding when it's contrary to what the regulation says. I mean, the question is, are we subject to the terms of this regulation when we are a Tefra partnership making the election? And the regulation says in its own terms is that this is a regulation that applies to an election by a small partnership. We were not a small partnership. The regulation by its terms does not apply. And just because it strains credulity to think that there might be another two forms of elections for different types of partnerships, you know, that that's that's to me is is an inappropriate basis for decision. And I could go on and explain why I do. I think. And this this relates to Judge Van Dyck's point is that, you know, in a Tefra partnership, you've already handed over the keys to the to the cookie store to the tax matters partner. The tax matters partner is running the show. And so to have the tax matters partner not be required to to pull every partner on an election like this, which in the scheme of things is actually kind of inconsequential related to most of the other elections that the tax matters partner has the power to do that, that it makes perfect sense to me that there would be two different rules. Not so quick. If the tax matters partner has the ultimate discretion, and if he polls, he she polls the remaining partners and there's disagreement, disagreement amongst them about whether that an election should or should not be made. But the tax matters partner makes the election, whatever it may be, aren't all partners at that point bound by the election made by the tax partner? That's correct. And in a Tefra partnership, if the tax matters partner takes an action and it's within the powers that are granted to the tax matters partner, doesn't matter if some of the partners dissent. Now, if you will, please walk us through why the 11th Circuit then was wrong in its resolution of that issue. Well, because it imposed the requirement that only exists in this regulation that each partner must sign. And the agency issue or the permission issue comes in only when you're required to have each partner sign. It's our contention that for a partnership that's already a Tefra partnership, the regulation does not apply and each partner need not sign, in which case it doesn't really matter if Greenberg got Seladium's approval because that approval is not required for the validity of the election. I'm getting a little short on time, so I'd like to reserve the rest for rebuttal if that's all right. That's fine. We'll hear from the other side. Good afternoon and may it please the court. I'll wait for my time to start. There we go. May it please the court. I'm Anthony Sheehan. I represent the Greenberg Association. Mr. Mather's opening argument really addressed only one of the many issues he raised in his brief, and that was the election of GG Capital to be a Tefra partnership in 1997. I would first start off with Mr. Mather commented that the government conceded that its statutory interpretation was wrong. I was rather presumptuous of him, I think, to try to speak on behalf of the other party. We do not make that concession. We maintain that the statutory interpretations we set forth in our brief is correct. Also, he brought up California agency law dating back over a century, I think is what he said. I don't recall seeing that in any of his briefing on this, and to bring it up at oral argument right now should not be considered by this court. It should be treated his way. Going on these regulation in this case as interpreted by the 11th circuit, and I think it's correctly interpreted by the 11th circuit, is that for a partnership to elect small to partnership to make the election to be a Tefra partnership, it has to be signed by all the partners. It just doesn't make sense. The threshold is, is this partnership required at all to make the election according to the opposing counsel? It only applies to small partnerships, and this wasn't a small partnership. Can you address that? Yes, Your Honor. I can address that in two ways. First of all, we have to look at the relevant statute here, 6231, and as we discussed in our brief, it starts off with defining what it means to be a partnership, and effectively 6231A1 cap A defines a partnership really as any partnership that requires partnership return. It presumes that, creates the general rule that all partnerships are B. B clause one states the exception for small partnerships, and it puts all partnerships that qualify in there. Then B clause two says that any partnership within A, which again recognizes all of this, may elect for a taxable year to have clause one not apply. So we would say the best reading of the statute is that clause one has to apply. It has to be a small partnership before you can elect out back into TEFRA. How many partners do we have here, in fact? In 1997, there were four partners, but one of them was a pass-through partner, and there's no dispute that in 97, GG Capital was a TEFRA partnership. Seladium, the pass-through partner, dropped out before the end of 97, it dropped out by 98. So in the later years, it was just Mr. Greenberg, Mr. Goddard, and Mr. Lee, which made it a small partnership. Council, just to be clear, so I'm understanding. Yes. It doesn't, nothing turns on the fact that they were a, or it's not directly relevant that they were a TEFRA, however you say it, TEFRA partnership during 1997, because that's not the years that matter for this case, right? But what they're trying to say is we opted to be a TEFRA partnership when we actually already were, and opting to do that was, meant that we should be a TEFRA partnership for every year going forward until we opt out. Is that, am I understanding that correctly? Well, your honor, the, whether they were a TEFRA partnership in 97 matters insofar as to whether they could make an election at all. And it matters under Mr. Mather's argument that somehow there are two separate regimes for making an election. However, it's the status in 97, you are correct, it would not, by 2000, 2001, it was a small part, it meant the definition of small partnerships in all terms of the election. They're saying that in 1997, they opted in. They were already a TEFRA partnership, but that they opted in, and so you're like, why does it matter that they opted in? But the reason it matters under their view of the case is if they opted in, they now opted in sort of permanently until they opt back out again, even when they, start being a small partnership to where they would have to opt in. That's the reason they're, they're making the argument based on 97, right? Yes, because if the election was valid in 97, it would still be valid in the later years. But we argue that it was not a valid election in 97 because of the statute, because of the election being invalid under the regulation as held by the tax court and as affirmed by the 11th circuit in its consideration of this election document. And your sort of policy argument, why the regulation, why it should be okay to have the regulation apply even if you're a TEFRA partnership, because even if you're a TEFRA partnership, if you're, whether you're a small partnership or you're a TEFRA partnership, if you're opting in for the foreseeable future, you want to make sure that all of the partners are agreeing, you know, all the partners are agreeing to opt in because maybe they're currently a TEFRA partnership. But, you know, if you're opting in for when they won't be a TEFRA partnership, then you want to make sure that each person agrees to this important decision that's being made. That is correct, your honor. Okay. And their response is, well, that's not required by that. You should only have to do that if you're only a small partnership. If you're already a TEFRA partnership, then that policy rationale doesn't apply. I believe that's their argument. You'd have to ask Mr. Mather on his rebuttal exactly what his argument is. I'm trying to make sure I understand. All right. Yes. If you look at the regulation, which is reproduced in the back of our brief, 301.6231A1-1T in Part B, B1, we think that the regulation makes clear our interpretation of the statute. Any partnership that meets the requirements set forth in A1B may elect under B2 to have the provisions of reinforces our interpretation that you have to be a small partnership to elect back into TEFRA. And then two is the method of election. So you've got to read B1 and B2 together. And B1 presumes that the universe has been limited by the statute already, the small partnerships. To do that as it may, we're right under the statute. And also just simply B2 discusses the method of election. Counsel, just so I understand, with the upshot of your position is that if you're already a TEFRA partnership because you fall in that bucket, then you don't have the ability to basically make yourself remain a TEFRA partnership in your, it's going to be on a year by year basis to evaluate whether you automatically fall in that bucket. And, or if you have now somehow as happened here, become a small partnership, now you can opt in using your regulation. But if you're a TEFRA partnership, you can't opt in going forward. That's your position. And the reason for that position is, it seems to me would be, well, we don't want, since you are giving all this authority to this person, essentially the managing partner or managing tax partner, we don't want that person to be able to make such a consequential decision for people in the future when it will no longer be automatically a TEFRA partnership. That is correct, your honor. If you're a TEFRA part, sorry, go ahead. If you're already a TEFRA partnership, there's no reason to elect to be a TEFRA partnership. But once you become a small partnership, you are fully entitled to elect to remain a TEFRA partnership. There may or may not be a reason to elect if you're already a TEFRA partnership, but I could see where you'd have a concern about allowing just that one partner in a partnership that where that one partner has all this authority, just because that's the way a TEFRA partnership works, not because people made a choice that be a TEFRA partnership, that be able to have that one partner opt in the future for when it seems like some mischief could be done there if you allowed them to do that. Yes, your honor. If you look at the statement from the congressional history, the Congress said that in a small partnership, the people are more likely to treat themselves as co-owners than as partners. And so it's necessary to get their consent to give that kind of authority and perpetuity to that one tax matters partner. So I think if I understand his argument, so you're saying they don't even have that authority to do it. You know, the regulation meant that they don't have the authority, but if they did have the authority, then there's a argument. Is that right? That if they did have the authority, they didn't do it correctly. They didn't do it properly because he didn't actually get permission from the other folks. And his response is I didn't need to, because under California law, that person has all the power and they don't have to, they just get to make the decisions. They don't have to ask. What is your response to that? I respond to that is that we're dealing here with a treasury regulation. It's a federal regulation that requires everybody to sign and California law cannot preempt this federal regulation to deal with a federal tax matter in terms of whether you're electing vis-a-vis the electing the status in your relationship with the federal government and with the IRS. And also as the 11th circuit pointed out, the California law deals with making a partner, binding the partnership, not the partner binding the other partners. We're dealing, of course, here with a partnership of fewer than 10 or fewer partners, each of whom is an individual, um, a C corporation or an estate. So getting, collecting those signatures is not, or at least getting those permissions and those powers of attorney is not an onerous burden here. Well, I think that's a good segue to having you express your view of the role of the 11th decision in our deliberations. Yes, your honor. Um, we did not, uh, research the law of the case and I'm hesitant to start opining on, on that matter. Certainly might apply. I did. And I didn't mean to find anybody, your adversary or your side on that. It just occurred to me as I sit here that, uh, we are not bifurcated courts that are going to arrive at different results in the same case, willy nilly, and that we ought to, it obviously kind of rule of the case rises up pretty aggressively in my analysis. But so please, you can ignore that if you wish, but what is your view otherwise? Well, our view was expressed in the 28 J letter. We've sent to the court and forming the court of the 11th circuits decision. He cited three cases of this court, uh, fangling Ali first charter financial and Salus Mundi where the court discussed, um, it's hesitation to reject the views of other circuits and tax cases. The uniform it is especially important. And then there's Salus Mundi where this court said that absent demonstrable error or strong reason, the court will follow the decisions of other circuits and tax cases. Here we have the 11th circuits decision that arose out of the same tax court proceeding, the same tax court opinion. Um, and we believe that the court should, we believe that the Mr. Matter and Mr. Goddard have not shown demonstrable error in what the 11th circuit said. We think it was an excellent opinion, a correct opinion, and we recommend it to the court and recommend and respectfully suggest that it should be followed. And, um, since the discussion of any of the other issues, um, in this case, unless the court has any questions, we will rest on our brief for those issues and ask the court to affirm and thank it for its time. Thank you very much. And, uh, you have some time for, uh, let's join you there. Thank you, your honor. Uh, a couple of points with respect to Mr. Sheehan's presentation. Um, he questioned my citation of century old California authority. It is in the opening brief at page 33 to 34 in the citation of McKenzie versus Dickinson. And there's actually a quote to that precise effect there. So it is not an issue that was raised just in argument. Um, with respect to the statutory construction, I may have been presumptuous in, in stating Mr. Sheehan's position, but in the 11th circuit opinion, they, they assumed that the tax court was wrong on that, on that issue on their, on the, on its interpretation of the statute. And that's why they devoted most of their attention to the application of the regulation. Because if, if the, if the tax court was correct on the statutory interpretation, it precludes a Tefra partnership from making an election altogether. So, so clearly the 11th circuit did not adopt that, uh, finding of the tax court. Um, with respect to the regulation that Mr. Sheehan cited, um, the B1 regulation, it says by its own terms that this is an election by a small partnership. And so it says a small partnership may make the election under this regulation. That is the precise literal language of the regulation that I'm saying the 11th circuit disregarded when it, when it wanted to find it, it's kind of touchy feely, uh, result. So, um, the, the only other issue that I'd like to address is the DBI issue, which I didn't get time to address in my, in my opening remarks. That issue is, is an issue upon which even the 11th circuit could not rule against us. Um, it, it, it, in spite of the fact that that it was extensively treated in the opening brief, the answering brief for the government and our reply brief, they got to the point of arguing that somehow the partnership items of a Tefra partnership could be raised in a non-Tefra case, which ours is. And they said that we waived the issue. And I don't know what waiver is in the 11th circuit, but I think I know what it is in the ninth circuit. And I don't know how it's possibly waived under those circumstances. I think they just simply declined to rule on that issue because there was no way on the merits of the issue. They could rule in, uh, against, against the government and they were determined to do, they were determined to rule in the government's favor. And I see my time is up and I'll submit on the briefs. Okay. We, we thank both parties for their arguments in the case of William Goddard v. Commissioner is, uh, submitted and we will take a brief recess for five minutes before hearing the next oral argument.
judges: Lucero, IKUTA, VANDYKE